Filed 10/10/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GUSTAVO NARANJO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SPECTRUM SECURITY SERVICES, INC., <br><br> Defendant and Appellant. | B256232 <br><br> (Los Angeles County Super. Ct. No. BC372146) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

The opinion filed in the above-entitled matter on September 26, 2019, is ordered MODIFIED as follows:

On page 42, the first three sentences of the second paragraph of Part IV.A are deleted and replaced with the following:

At all times relevant to this action, Spectrum's written policies did not authorize off-duty rest breaks. Pre-Memorandum 33, Spectrum's SOP and SOPP advised, "This job does not allow for breaks other than using the hallway bathrooms for a few minutes." Memorandum 33 stated, "rest periods are provided 'On-Duty.'"

This modification does not change the judgment.

The petition for rehearing is DENIED.

_____
WILLHITE, Acting P. J.,    CURREY, J.,    DUNNING, J.*

*     Retired judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/26/19 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| GUSTAVO NARANJO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SPECTRUM SECURITY SERVICES, INC., <br><br> Defendant and Appellant. | B256232 <br><br> (Los Angeles County <br> Super. Ct. No. BC372146) |


APPEAL and cross-appeal from a judgment of the Superior Court of Los Angeles County, John A. Kronstadt and Barbara M. Scheper, Judges.  Affirmed in part and reversed in part with directions.

Marsili Rapp, Howard Z. Rosen, Brianna M. Primozic and Jason C. Marsili for Plaintiffs and Appellants.

Carothers DiSante & Freudenberger, Dave Carothers and Steven A. Micheli for Defendant and Appellant.

## INTRODUCTION

Named plaintiff and class representative Gustavo Naranjo and a certified class of former and current employees took their lawsuit against defendant Spectrum Security Services, Inc. (Spectrum) to trial. They alleged Labor Code section 226.7[1] meal break violations and sought premium wages, derivative remedies pursuant to sections 203 (waiting time penalties) and 226 (itemized wage statement penalties), and attorney fees. The results were mixed, and both sides appeal.

We hold: (1) at-will, on-call, hourly, nonexempt employees who are paid for on-duty meal periods are also entitled to premium wages if the employer does not have a written agreement that includes an on-duty meal period revocation clause (§ 226.7); (2) unpaid premium wages for meal break violations accrue prejudgment interest at seven percent; (3) unpaid premium wages for meal break violations do not entitle employees to additional remedies pursuant to sections 203 and 226 if their pay or pay statements during the course of the violations include the wages earned for on-duty meal breaks, but not the unpaid premium wages; (4) without section 226 penalties, attorney fees pursuant to section 226, subdivision (e) may not be awarded; and (5) the trial court prejudicially erred in denying certification of a rest break class.

## FACTUAL AND PROCEDURAL BACKGROUND

Spectrum contracts exclusively with federal agencies. Its officers take temporary custody of federal prisoners and ICE (Immigration and

---

[1]     All undesignated statutory citations refer to the Labor Code.

2

Customs Enforcement) detainees who must travel offsite for medical treatment or other appointments, and they provide continuous supervision until the individuals are returned to their custodial locations. Spectrum officers also guard witnesses awaiting court appearances. In Spectrum parlance, the individuals they transport and guard are referred to as "posts"; i.e., a post is a person, not a location.

Spectrum's officers are at-will, on-call, hourly, nonexempt employees. Spectrum's company policy has always required on-duty meal periods, for which the employees are paid at their regular rate. Although Spectrum typically assigns two officers or an officer and supervisor to each post, Spectrum officers cannot leave the room or building where their post is located. On occasion, they can coordinate with other Spectrum officers and go nearby to eat or pick up food for themselves and colleagues, but they must remain on-call and within radio range.

For the relevant time period before October 1, 2007, Spectrum had two different employee manuals. The first was the Standing Operational Procedures (SOP) manual. The SOP was replaced in 2006 with the SOPP (Standing Operational Procedures and Policies) manual. The "Work Breaks" sections in both manuals contained the following introductory language: "This job does not allow for breaks other than using the hallway bathrooms for a few minutes." The SOP and SOPP included similar meal break policy language, with a short list of "do's" and a longer list of "don'ts." Neither the SOP nor the SOPP included a written advisement that employees could revoke, in writing, the on-duty meal break policy agreement at any time.

3

Employees did not sign the SOP or SOPP. They did sign a separate document acknowledging their receipt and careful examination of the SOP or SOPP, as well as a variety of other Spectrum documents.

"Memorandum 33" was issued on October 1, 2007, after this lawsuit was filed. This one-page document addressed only meal and rest breaks. Unlike the SOP and SOPP, Memorandum 33 advised, "Meal and rest periods must be taken." It reaffirmed Spectrum's longstanding policy that meal and rest periods were "on duty." Memorandum 33 included the following paragraph above the employee signature line: "I agree to accept 'paid On-Duty' meal periods during my employment with [Spectrum]. I understand that this agreement may be revoked in writing at any time. However, I also understand that due to the nature of work performed by Spectrum, agreeing to 'On-Duty' meal periods is a condition of continued employment. I further understand that this agreement does not create a guarantee for continued employment and does not change my at-will employment status with Spectrum."

Naranjo began working for Spectrum in December 2006. He was terminated in May 2007 after he left his post for a meal break.

Naranjo filed this lawsuit as a putative class action the following month, alleging Spectrum failed to provide its security personnel with meal and rest breaks, as required by section 226.7 and Industrial Wage Commission (IWC) Wage Order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040 (Wage Order 4). Before Naranjo filed his motion for class certification, Spectrum was granted summary judgment on the basis

4

that all causes of action were preempted by the McNamara-O'Hara Service Contract Act of 1965 (41 U.S.C. § 351 et seq.). This court rejected Spectrum's federal preemption/lack of jurisdiction arguments based on the Service Contract Act, reversed as to the causes of action based on alleged Labor Code violations (§§ 203, 226, and 226.7), and otherwise affirmed. (*Naranjo v. Spectrum Security Services, Inc.* (2009) 172 Cal.App.4th 654, 667-668 (*Naranjo I*).)

Naranjo's class certification motion was heard before the Supreme Court issued its decision in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004 (*Brinker*). The trial judge granted the motion in part and denied it in part. A class of "'all non-exempt detention officers and security officers employed by Spectrum in California during the Class Period of June 4, 2004 to the present'" was certified as to the first cause of action (meal period violations (§ 226.7)), third cause of action (waiting time penalties (§ 203)), and fourth cause of action (itemized wage statements (§ 226)). The trial court qualified Naranjo as the class representative and the law firm of Posner & Rosen as class counsel.

The trial court declined to include the second cause of action for alleged rest break violations in the class certification order. The trial court acknowledged Spectrum's companywide policy not to permit duty-free rest breaks; but nevertheless found that common questions did not predominate, which meant Naranjo's claims were not typical and the class action format was not the superior means to resolve the rest break claim. The trial court was persuaded that common fact issues did not predominate because "some of the declarants on [Spectrum's] side assert that [Spectrum] did permit duty-free rest breaks." The following

5

year, post-*Brinker*, the new trial judge declined to revisit the denial of Naranjo's motion to certify a rest break class.

The parties stipulated to try the lawsuit in three phrases.[2] The first phase was a bench trial involving several Spectrum affirmative defenses. Spectrum lost. As the phase one rulings are not implicated in this appeal, we forgo a discussion of them.

Next, the meal break class cause of action was tried to a jury. The meal break class spanned the period from June 4, 2004 through the time of trial and consisted of two subclasses. The "pre-Memorandum 33" subclass included employees who worked through September 30, 2007; the "Memorandum 33" subclass included employees who signed that agreement, effective October 1, 2007.

The pre-Memorandum 33 subclass, insisting its members worked without a legally compliant meal break policy, filed a series of motions in limine. At the trial court's invitation, Spectrum made an offer of proof. The trial court considered the arguments and documents and excluded the proffered evidence.

At the close of testimony, the trial court granted a directed verdict in favor of the pre-Memorandum 33 meal break subclass: "Spectrum

---

[2] Before the first phase, Spectrum filed a declaratory relief action against Naranjo and the Department of Homeland Security in the United States District Court for the Southern District of California. Spectrum took the position there, as it did earlier in this case, that employees worked pursuant to federal government contracts and were not bound by California labor laws. The federal district court granted dismissed the entire action for lack of subject matter jurisdiction. (*Spectrum Security Servs. v. Naranjo* (S.D.Cal. Oct. 4, 2012, No. 312-CV-425-JM) 2012 U.S.Dist. Lexis 193485.)

failed to comply with the requirements of the wage order since it had no written agreement with its employees by which employees agreed to the on-duty meal period and were advised that their agreement could be revoked in writing. Spectrum argued that its written policy and procedure manuals consistently advised employees that meal periods would be on duty. In addition, according to Spectrum, employees could in effect revoke their agreement to the on-duty meal period by declining to accept an assignment on any given day or to request not to be scheduled for a particular day. Although the [trial] court does not disagree that the foregoing facts were proven by Spectrum, . . . [t]he combination of policies and procedures along with the on-call status of employees is not a substitute for the mandated written agreement."

With this ruling, and based on *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094 (*Murphy*), the parties stipulated the pre-Memorandum 33 meal break subclass was owed $1,393,314 in premium pay for the period from June 4, 2004 until September 30, 2007. The jury returned a verdict in Spectrum's favor against the Memorandum 33 subclass.

The third phase, again a bench trial, concerned only the pre-Memorandum 33 meal break subclass and the two Labor Code derivative causes of action−section 203's waiting time penalties and section 226's itemized wage statement penalties. Relying again on *Murphy's* holding that premium pay awarded to employees for noncompliant meal break policies is a wage and not a penalty for

7

statute of limitations purposes, the trial court determined sections 203 and 226 were potentially applicable.[3]

Because Spectrum failed to pay the pre-Memorandum 33 meal break subclass a one-hour premium for each workday the noncompliant meal break policy was in effect, that sum was not reflected in employee's paychecks. The trial court concluded this failure was "knowing and intentional," pursuant to section 226, entitling the pre-Memorandum 33 meal break subclass to itemized wage statement penalties. The parties stipulated the section 226 penalty was $399,950.

Section 203, unlike section 226, requires a finding of willfulness by the employer before penalties may be assessed. The trial court determined Spectrum's failure to include the meal break premium wage in the final paychecks of employees who separated from the company was not willful and ruled in Spectrum's favor on the section 203 waiting time penalties claim.

Judgment was entered January 31, 2014. The trial court awarded prejudgment and postjudgment interest, each at 10 percent. As named plaintiff and class representative, Naranjo received a $10,000 service/enhancement payment. Class counsel Posner & Rosen were

---

[3] Section 203, subdivision (a) provides for a penalty of up to 30 days of wages "[i]f an employer willfully fails to pay, [when due,] any wages of an employee who is discharged or who quits."

Section 226, subdivision (e)(1) authorizes a penalty payable to employees "suffering injury as a result of a knowing and intentional failure by an employer to [provide accurate and complete information]" in the statutorily required itemized wage statements.

8

awarded attorney fees as part of the judgment pursuant to section 226, subdivision (e), albeit in an amount less than requested.

Both sides appeal from the judgment. Spectrum challenges its liability for premium wages to the pre-Memorandum 33 meal break subclass and for section 226 itemized wage statement penalties, the stipulated premium wage award, the award of prejudgment interest, and the section 226, subdivision (e) award of attorney fees to class counsel. The pre-Memorandum 33 meal break subclass attacks the denial of section 203 waiting time penalties and the trial court's decision to apportion and reduce the attorney fees. Pursuant to Code of Civil Procedure section 906, Naranjo also seeks review of the intermediate order denying certification of the proposed rest break class.

## DISCUSSION

I. *At-will, On-call, Hourly, Nonexempt Employees who are Paid for On-duty Meal Periods also Are Entitled to Premium Wages if the Employer Does Not Have a Written Agreement with an On-duty Meal Period Revocation Clause*

A. *Overview and Standard of Review*

California's wage and hour protections for employees include guaranteed meal and rest periods. (*Brinker, supra,* 53 Cal.4th at p. 1017.) These guarantees are set forth in the Labor Code (§ 512) and IWC wage orders. Wage orders are "legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions." (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th

9

257, 262, fn. 5 (*ABM Security*).)  Wage orders represent the IWC's interpretation of Labor Code provisions (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 801 (*Yosemite Water*) and have the same force and effect as statutes (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 552).  Together, the Labor Code and IWC wage orders provide "complementary and occasionally overlapping sources of authority." (*Brinker,* at p. 1026.)

We review de novo trial court interpretations of the Labor Code and IWC wage orders.  (*ABM Security, supra,* 2 Cal.5th at p. 262.)  We generously construe statutory and regulatory provisions in favor of protecting employee rights (*ibid.*) and accord IWC interpretations "considerable judicial deference" (*Yosemite Water, supra,* 20 Cal.4th at p. 801).

Additionally, our review is assisted by Division of Labor Standards Enforcement (DLSE) opinion letters.  The DLSE enforces the Labor Code and IWC wage orders and issues written opinion letters interpreting the latter.  (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581.)  Although DLSE opinion letters do not receive the same deferential treatment as IWC wage orders, they frequently offer valuable guidance for courts tasked with independent review of Labor Code and wage order provisions.  (*Brinker, supra,* 53 Cal.4th at p. 1029, fn. 11.)

10

B. *Governing Principles—Mandatory Meal Periods*

Mandatory meal and rest period laws and regulations are motivated by concerns for employee health and safety to ensure that employees have "time free from employer control . . . to be able to accomplish important personal tasks." (*Murphy, supra,* 40 Cal.4th at p. 1113.) For this reason, meal breaks typically are "off the clock" and represent unpaid time during the employee's workday. The traditional remedy for a meal break violation has been injunctive relief. (*Id.* at pp. 1113, 1105.)

With the enactment of section 226.7 in 2000, however, the Legislature authorized monetary remedies for violations of meal and rest break laws and regulations. (*Brinker, supra,* 53 Cal.4th at p. 1017.) During the timeframe relevant to this litigation, section 226.7, subdivision (b) read as follows: "If an employer fails to provide an employee a meal period . . . in accordance with an applicable order of the [IWC], the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."[4]

---

[4] These requirements are now found in subdivision (c) of section 226.7, which reads in relevant part: "If an employer fails to provide an employee a meal . . . period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the [IWC], the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided."

11

Subdivision 11(A) of Wage Order 4 specifies, "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty *and* when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time." Subdivision 11(B) adds, "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A), (B), italics added.)

C.     *Governing Principles—On-Duty Meal Breaks*

The Legislature and IWC recognize certain occupations do not lend themselves to providing employees with off-duty meal breaks. Wage Order 4 authorizes on-duty meal breaks if the conditions in subdivision 11(A) set forth above are met. The Supreme Court has described the on-duty meal period exception as "exceedingly narrow, applying only when (1) 'the nature of the work prevents an employee from being relieved of all duty' and (2) the employer *and* employee have agreed, in writing, to the on-duty meal period. [Citation.] Even then, the employee retains the right to 'revoke the agreement at any time.'" (*ABM Security, supra,* 2 Cal.5th at pp. 266-267.)

12

The DLSE has opined that "blanket" agreements for on-duty meal periods are acceptable, so long as they "expressly state that the employee may, in writing, revoke the agreement at any time, as required under [the applicable ] Wage Order." (*Meal Periods for Fuel Carriers Subject to Federal Safety Regulations* (June 9, 2009), p. 9, <https://www.dir.ca.gov/dlse/opinions/2009-06-09.pdf> (*Fuel Carriers*).) *Fuel Carriers* also advises that an on-duty meal period is "counted as time worked. Furthermore, unless the conditions are met for an on-duty meal period as required under [the] Wage Order . . . [the employee is] entitled to one additional hour of pay at the employee's regular rate of compensation" pursuant to section 226.7. (*Id.* at pp. 5-6.)

*Brinker* explained that once an employee has been on the job "for five hours, an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay. (§ 226.7, subd. (b); Wage Order No. 5, subd. 11(A), (B).)" (*Brinker, supra,* 53 Cal.4th at p. 1039.) In this regard, *Brinker* quoted with approval the following excerpt from the amicus brief DLSE submitted in that case: "'The employer that refuses to relinquish control over employees during an owed meal period violates the duty to provide the meal period and owes compensation [and premium pay] for hours worked.'" (*Id.* at p. 1040, fn. 19.)

13

To summarize, employees who sign on-duty meal agreements that include a right-to-revoke clause are entitled to be paid their regular wages for every on-duty meal period, but they are not entitled to one-hour of premium pay.[5]  However, if all the requirements for a compliant on-duty meal period are not met, e.g., there is no signed agreement with a right-to-revoke clause, the employer owes employees their regular wage for working during the meal break, plus one hour of premium pay for every workday the meal break policy was noncompliant, also at the employees' regular rate of compensation.  (Wage Order 4, subd. 11(A); *Kaanaana v. Barrett Business Services, Inc.* (2018) 29 Cal.App.5th 778, 802, review granted on another issue Feb. 27, 2019, S253458 (*Kaanaana*); *Zakaryan v. The Men's Wearhouse, Inc.* (2019) 33 Cal.App.5th 659, 668, review granted July 10, 2019, S255610 and disapproved on another point in *ZB, N.A. v. Superior Court* (Sept. 12, 2019, S246711) __ Cal.5th __, __ ["If an employer does not comply with the meal and rest break rules applicable to nonexempt employees, an employee is entitled to an additional hour's pay for each workday that a meal or rest period was not offered.  (§ 226.7, subd. (c).)"].)

---

[5]     Spectrum's Memorandum 33, effective October 1, 2007, is a blanket agreement designed to comply with Wage Order 4, subdivision 11(A).  The legal adequacy of the Memorandum 33 language is not before us, nor are we asked to decide whether a blanket on-duty meal break agreement with a right-to-revoke clause is acceptable, as the DLSE has opined.

D.    *Analysis*

Pre-Memorandum 33, Spectrum employees did not sign a written agreement concerning the on-duty meal period. Nor were employees advised they could "in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A).) Nevertheless, Spectrum took the position it "substantially complied, if not strictly complied, with the intent of IWC Wage Order 4's requirements for a permissible on-duty meal period; and the officers understood and agreed to the on-duty meal periods, and knew they could 'revoke' the agreement in several ways, including declining an assignment." Spectrum argued it was not necessary "to 'cobble' together documents [for the employees] to understand they were agreeing to on-duty meal periods. If they did not want to work a day with an on-duty meal period, they could decline an on-call assignment or ask for another shift, or ask for other [unspecified] accommodations, or they could quit."

Although the trial court rejected this argument, it did so only after reviewing the eight documents Spectrum submitted, none of which included the mandatory right-to-revoke language set forth in Wage Order 4. The trial court also did not permit Spectrum to present witness testimony as to any oral on-duty meal break agreements. At the close of evidence, the trial court granted a directed verdict in favor of the pre-Memorandum 33 meal break subclass.

On appeal, Spectrum complains the evidentiary rulings and directed verdict were the result of the trial court's erroneous conclusion that Wage Order 4 required "the on-duty meal period agreements [to] be contained in one document" and deprived it of the opportunity to show

15

that a collection of documents in its possession demonstrated "the parties' understanding and intent, and practice and performance," all within the spirit of Wage Order 4.

Spectrum's "single document" argument does not withstand scrutiny. Rather, it appears to be an effort to deflect attention from the uncontroverted fact that, regardless of the number of documents involved, none included a compliant written meal period break policy before the issuance of Memorandum 33. The colloquy between the trial court and Spectrum's counsel is telling in this regard.[6]

---

[6] The dialogue was robust, and we reproduce pertinent portions for context. Early in the discussion, the trial judge signaled her agreement in principle with Spectrum's "argument that it's not necessary for compliance with the wage order to have a single document that sets forth that the employee is agreeing to an on-duty meal period and describes how they can go about revoking that agreement." The trial judge also recognized that "the rules require some technical compliance, and I don't think that the selection of policies and procedures and memos, either taken separately or together, as you suggest, is—constitutes legal compliance with the wage order . . . . [¶] And I believe my finding would be that as a matter of law, the failure to have a document that contains . . . both the acknowledgement that the meal period is going to be on duty, as well as the right to revoke and a method of revocation, has to be in, then, I guess, one place, I would say." The trial judge added, however, that if one document "set forth the necessary elements, and we had a separate document acknowledging it, I don't think I would have a problem with that. [¶] So I don't disagree with [Spectrum] that . . . there might be different methods by which [the employer] would accomplish compliance with the wage order. I just don't think the method that you're proposing, which relies on a number of different documents received over time, and none of which, I think, specifically state[s] what is necessary for compliance with the wage order, I don't think that, as a matter of law, can be compliance with the wage order."

When Spectrum's counsel asked whether "a 50-page agreement that has both provisions in it . . . would satisfy," the trial judge readily agreed it might: "I could envision a situation where that would be sufficient." She

16

The trial court's comment in the statement of decision that Wage Order 4 "clearly contemplates a single written agreement" was no more than an observation. The ruling was "that Spectrum failed to comply with the requirements of [Wage Order 4] since it had no written agreement with its employees by which employees agreed to the on-duty meal period and were advised that their agreement could be revoke in writing." We agree with the ruling.

Wage Order 4 requires that employer/employee agreements be in writing and include language expressly advising "the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 11040, sub. 11(A).) Spectrum suggests that substantial, rather than

reiterated, however, that Spectrum's various documents did not have all the required provisions and were not in compliance with the wage order.

Spectrum's counsel continued to press the single-document issue and asked whether the trial judge took the position that the meal break policy had to be in "a separate written agreement that relates only to meal periods." The trial judge again explained that a single document was not required and multiple agreements would "probably be fine . . . but I don't think that's what we have here." She added, "I'm reading the documents [Spectrum submitted], and I am not finding language that either specifically or generally complies with the wage order, either in a single document or in a combination of documents."

Sensing a wind shift, Spectrum's counsel tacked and launched a contract interpretation argument. The trial judge responded, "we're not in a breach of contract case [where the intent of the parties would be relevant]": "[A]ll we're doing here is determining whether [Spectrum] complied with the wage order, and employees['] . . . evaluation[s] of whether the language is sufficient [is not] relevant. The issue is . . . a legal issue, and I think it's . . . pretty simple, although . . . you're making it awfully complex. [¶] I'm not saying that your Memo 33 is the only way to do it, but that seems to be to be perfectly compliant with the rule. There may have been other ways to comply with the rule, but the way that you're proposing[,] I don't believe, legally, is one of them."

by-the-book, compliance with Wage Order 4's mandatory language is sufficient and urges one may imply compliance based on the parties' course of dealing. Such an interpretation of Wage Order 4 would shatter the "exceedingly narrow" exception for on-duty meal periods (*ABM Security, supra,* 2 Cal.5th at p. 266) and fundamentally alter the conditions for legally compliant on-duty meal periods. We decline to accept it. Spectrum's companion claim of evidentiary error fails for the same reason.

Additionally, Spectrum fails to offer any germane legal support for its position. *Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, upon which it relies, is distinguishable. *Von Nothdurft* addressed Wage Order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050, subd. 10(C)), which governs how apartment building owners may credit a resident manager's free lodging against the obligation to pay minimum wages. That wage order requires "a voluntary written agreement between the employer [owner] and the employee [resident manager]." (*Id.* at p. 530.) Both parties voluntarily signed such an agreement. (*Id.* at p 529.)

The issue in *Von Nothdurft* was whether the written agreement complied with the wage order (*id.* at p. 530), not whether something other than a written agreement would suffice. Additionally, the wage order under consideration in *Von Nothdurft* did not "specify that any particular terms must be included in such an agreement to permit a valid lodging credit—it require[d] only a 'voluntary written agreement between the employer and the employee' [citation] without qualification." (*Id.* at p. 532.) By contrast, Wage Order 4 not only

18

requires a written agreement, it mandates the inclusion of a particular term, i.e., "that the employee may, in writing, revoke the agreement at any time." (Cal. Code Regs., tit. 8, § 1040, subd. 11(A).)

Spectrum's argument more closely resembles the one accepted by the Court of Appeal in *Monzon v. Schaefer Ambulance Serv.* (1990) 224 Cal.App.3d 16 (*Monzon*), an overtime case, but subsequently criticized by the Supreme Court. The applicable wage order in *Monzon* provided that daily overtime provisions would not apply to ambulance drivers and attendants who worked 24 hour shifts and also agreed in writing to forgo pay for up to eight hours of sleep time per shift. (*Id.* at pp. 31-32.) The Court of Appeal framed the issue as follows: "[W]hether or not an employer of ambulance drivers and attendants can have an agreement, other than a written agreement, with such employees to exclude sleep time from compensable time." (*Id.* at pp. 40-41.)

Notwithstanding the applicable wage order's requirement of a written agreement, the *Monzon* majority held ambulance drivers and attendants could orally waive up to eight hours of compensable time in any one shift. (*Monzon, supra,* 224 Cal.App.4th at p. 46.) The majority discounted the written agreement clause and relied instead on a federal regulation that had not been incorporated into the wage order. (*Id.* at pp. 31-32, 43.)

Although the Supreme Court has not disapproved *Monzon*, it has roundly questioned the decision's perspicuity and reasoning and expressly limited *Monson's* holding to its facts. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 845.) *Mendiola*, in turn,

19

supports our conclusion that "in lieu of" compliance with a wage order is not sufficient. As Spectrum itself notes, one analytical takeaway from *Mendiola* is that a court's review of IWC wage orders should be """"properly circumscribed."""" (*Id.* at p. 847.) Another is the reaffirmation that, absent an element of arbitrariness, courts take IWC wage orders at face value, generously interpreting them for the protection and benefit of employees. (*Id.* at pp. 840-848.) In this case, Wage Order 4 unambiguously requires a written agreement with an explicit right-to-revoke clause. This requirement protects and benefits employees, and we do not accept a lesser substitute for it.

The trial court recognized as much. It neither ignored Wage Order 4 nor grafted additional provisions onto it. Spectrum's pre-Memorandum 33 on duty meal period policy failed not because it violated a supposed "single document" rule, but because it lacked an employee's written agreement to on-duty meal periods and written notice of an employee's right to revoke that agreement. The absence of a compliant written on-duty meal period agreement rendered Spectrum liable to the pre-Memorandum 33 meal break subclass.

Spectrum's stipulation in the trial court that the pre-Memorandum 33 meal break subclass was owed $1,393,314 in premium wages was made "[w]ithout waiving any arguments." As Spectrum notes, it has "consistently argued that proof of causation and harm [are] necessary, and premium pay [is] not automatic." The law is to the contrary. (*Murphy, supra,* 40 Cal.4th at p. 1108 ["an employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period"].)

20

That portion of the judgment finding Spectrum liable for premium wages to the pre-Memorandum 33 meal break subclass in the amount of $1,393,314 is affirmed.

II. *Employees Entitled to Premium Wages Pursuant to Section 226.7 May Not, for that Reason Alone, Pursue Derivative Remedies Pursuant to Sections 203 (Waiting Time Penalties) and 226 (Itemized Wage Statement Penalties)*

A. *A Wage by any Other Name*

Wages "are accorded 'a special status' under California law." (*Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1331.) The Legislature has defined "wages" as all "amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (§ 200, subd. (a).) "[A] wage is anything 'promised as part of the compensation for employment,' and it is due when 'all conditions agreed to in advance . . . have been satisfied." (*Davis,* at p. 1331, fn. 20.) "'[W]ages' also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay.'" (*Murphy, supra,* 40 Cal.4th at p. 1103.)

1. *Section 226.7*

Before 2000, the term "premium wages" generally referred to overtime pay earned by employees for their labor. (See, e.g., *California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d

95, 126.) In 2001, after section 226.7 became effective, the DLSE issued the first of several opinions applying the term "premium wages" to section 226.7's hour of pay for meal period violations. (*Murphy, supra,* 40 Cal.4th at p. 1105, fn. 7.)

The Legislature did not characterize section 226.7's premium pay as either a wage or a penalty and did not prescribe the statute of limitations for a section 226.7 action. DLSE opinions waffled on the subject (*Murphy, supra,* 40 Cal.4th at p. 1105, fn. 7), and intermediate appellate courts were not of a single mind. The characterization was critical, as the statute of limitations for a wage action is three years, but only one year for a penalty. (Compare, e.g., § 226, subd. (e) (former subd. (b)) [expressly characterizing the itemized wage statement statute as a penalty] and § 203, subd. (b) [express provision that the statute of limitations to sue for waiting time penalties was the same as for "an action for the wages from which the penalties arise"].)

*Murphy* acknowledged that section 226.7's language reasonably could be interpreted as either a wage or a penalty. (*Murphy, supra,* 40 Cal.4th at p. 1104.) Accordingly, the Court analyzed the wage-versus-penalty issue by examining section 226.7's "ostensible objectives [and] legislative history." (*Id.* at p. 1105.) Although the premium wage for missed meal and rest breaks "act[ed] as an incentive for employers to comply with labor standards," the primary objective was "to compensate employees," suggesting the payment was more like a wage than a penalty. (*Id.* at p. 1110.)

The legislative history for section 226.7 solidified that conclusion. (A.B. No. 2509 (1999-2000 Reg. Sess. (Bill No. 2509).) *Murphy* noted the draft language for section 226.7 required the employee to pursue an enforcement action to remedy a meal or rest period violation and provided for a payment to the employee and a penalty to be collected by the Labor Commissioner. (*Murphy, supra,* 40 Cal.4th at pp. 1106, 1108.) By the time section 226.7 was enacted, however, the Legislature deleted the penalty language (*id.* at p. 1107), reduced the monetary remedy to one additional hour of pay (*ibid.*), and "eliminated the requirement that an employee file an enforcement action, instead creating an affirmative obligation on the employer to pay the employee one hour of pay" (*id.* at p. 1108).

Along these lines, *Murphy* contrasted Bill No. 2509's language, as it pertained to section 226.7, with the wording in the portion of Bill No. 2509 that amended section 226. The Legislature rewrote section 226 at the same time it added section 226.7, but maintained section 226's penalty language—"further evidence that the Legislature did not intend section 226.7 to constitute a penalty." (*Murphy, supra,* 40 Cal.4th at p. 1108.) *Murphy* inferred from section 203's statute of limitations language "that, had the Legislature intended section 226.7 to be governed by a one-year statute of limitations, the Legislature knew it could have so indicated by unambiguously labeling it a 'penalty.'" (*Id.* at p. 1109.)

In *Murphy,* the Supreme Court noted "the Legislature intended section 226.7 first and foremost to compensate employees for their

23

injuries." (*Murphy, supra,* 40 Cal.4th at p. 1111.)  Nonetheless, because an employee's right to receive the premium wage accrued every day without a compliant meal break, the Court unanimously held, "a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime."  (*Id.* at p. 1108; see also *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 52; *Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1155 ["the employee is 'immediately' entitled to the premium wage, without any demand" or action by the employee].)

*Murphy's* wage-versus-penalty debate was straightforward.  Its context was the statute of limitations for a section 226.7 action. Recognizing the longstanding precept "that statutes governing conditions of employment are to be construed broadly in favor of protecting employees" (*Murphy, supra,* 40 Cal.4th at p. 1103), *Murphy* determined the additional hour of pay was a wage for statute of limitations purposes, giving workers three years to sue, instead of the one year applicable to penalties (*id.* at p. 1102).

*Murphy* and its rationale proved to be just a tip of the proverbial iceberg, however.  Five years later, *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 (*Kirby*) added dimension to the discussion.[7]

In *Kirby*, the trial court awarded attorney fees to the prevailing employer in an employee action for the alleged failure to provide section

---

[7]     For perspective, *Brinker, supra,* 53 Cal.4th 1004 was filed 18 days before *Kirby, supra,* 53 Cal.4th 1244.

226.7 rest breaks. Citing *Murphy* and section 218.5,[8] the Court of Appeal affirmed, holding an employer was entitled to attorney fees because the employees sued for "'additional wages,'" i.e., rest break premium pay. (*Kirby, supra,* 53 Cal.4th at p. 1250.)

The Supreme Court "granted review to consider when, if ever, a party who prevails on a section 226.7 action for an alleged failure to provide [meal and/or] rest breaks may be awarded attorney's fees" pursuant to sections 1194 or 218.5. (*Kirby, supra,* 53 Cal.4th at p. 1248.) The short answer is never: "We conclude, in light of the relevant statutory language and legislative history, that neither section 1194 nor section 218.5 authorizes an award of attorney's fees to a party that prevails on a section 226.7 claim." (*Ibid.*)

The reasoning is that "a section 226.7 action is brought for the *nonprovision of meal and rest periods,* not for the "'nonpayment of wages.'"" (*Kirby, supra,* 53 Cal.4th at p. 1255.) *Kirby* added, "[t]he 'additional hour of pay' provided for in subdivision (b) is the legal

---

[8]     When *Kirby* was decided, section 218.5 provided in pertinent part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194."

Section 1194 provides in relevant part: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

remedy for a violation of subdivision (a), but . . . [a]n employer's failure to provide an additional hour of pay does not form part of a section 226.7 violation, and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation.  The failure to provide required meal and rest breaks is what triggers a violation of section 226.7.  Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks." (*Id.* at pp. 1256-1257.)

*Kirby* did not perceive a need to reconcile the denial of attorney fees in section 226.7 actions with *Murphy's* conclusion that section 226.7's "remedy is a 'wage' *for purposes of determining what statute of limitations applies.*" (*Kirby, supra,* 53 Cal.4th at p. 1256, italics added.) Rather, *Kirby* concluded the holdings were "not at odds" with each other:  "To say that a section 226.7 remedy is a wage, however, is not to say that the *legal violation* triggering the remedy is nonpayment of wages.  As explained above, the legal violation is nonprovision of meal or rest breaks, and the object that follows the phrase 'action brought for' in section 218.5 is the alleged legal violation, not the desired remedy." (*Kirby, supra,* 53 Cal.4th at p. 1257.)

When *Kirby* was decided, the attorney fees provision in section 218.5 was "a two-way fee-shifting statute, permitting an award of fees to either employees or employers who, as relevant here, prevail on an 'action brought for the nonpayment of wages.'" (*Kirby, supra,* 53 Cal.4th at p. 1251.)  Post-*Kirby*, the Legislature added a figurative speed bump for employers:  "Prior to 2014, section 218.5 did not

26

distinguish between prevailing employers and employees. It was a true 'two way' fee shifting statute that awarded fees to the winner, whether employee or employer. [Citation.] An amendment to section 218.5, effective January 1, 2014, changed this. Now, if an employer defeats an employee's wage action, 'attorney's fees and costs shall be awarded . . . only if the court finds that the employee brought the court action in bad faith.' (§ 218.5, as amended by Stats. 2013, ch. 142, § 1.)" (*USS-Posco Industries v. Case* (2016) 244 Cal.App.4th 197, 216.)

>>>>>>>>>2.<<<<<<<<<*Post-Kirby Discord*

Once *Murphy* established that the remedy for meal and/or rest period violations constituted a wage for statute of limitation purposes and after *Kirby* held that attorney fees could not be awarded to pursue those claims, attention turned in earnest to the applicability of section 226.7 remedies to the penalty provisions in sections 203 and 226.

Section 203, enacted during the Depression, imposes a penalty on an employer willfully failing to timely pay wages upon an employee's discharge or voluntary separation from employment.[9] (See fn. 4.) Section 203, subdivision (a) calculates the penalty as the employee's per diem wages from the date they are due until paid, for a period not to exceed 30 days. Informally dubbed the "waiting time penalty," section 203, subdivision (b) expressly provides that any suit to recover those

---

[9] Precursor legislation was first enacted in 1915 and amended several times before section 203 was passed. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1398-1399.)

penalties is governed by the statute of limitations applicable to actions for wages, not penalties.

Section 226 is a World War II-era statute. (See fn. 4.) Subdivision (a) imposes a penalty on employers who knowingly and intentionally fail to provide itemized wage statements for, inter alia, gross and net wages "earned." The method to calculate a section 226 penalty is specified in subdivision (e). Unlike sections 203 and 226.7, section 226 expressly authorizes attorney fees to a prevailing "employee suffering injury as a result of a knowing and intentional failure by an employer to comply with" the itemized wage statement requirements. (§ 226, subd. (e).) The statute of limitations for a section 226 penalty claim is one year. (*Falk v. Children's Hospital Los Angeles* (2015) 237 Cal.App.4th 1454, 1469.)

Causes of action for waiting time and itemized wage statement penalties (§§ 203, 226) generally are referred to as derivative of an employee's right to the wages themselves: An employee's right to wages accrues at the time work is performed, but "[t]he right to a penalty . . . does not vest until someone has taken action to enforce it." (*Murphy, supra,* 40 Cal.4th at p. 1108.) As this court previously has held, causes of actions for waiting time and itemized wage statement penalties, like causes of actions pursuant to section 226.7 for the nonprovision of meal or rest breaks, "do not seek to collect due and unpaid wages." (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 684 (*Lane*).) Claims for "interest, costs and attorney fees under sections

28

218.5 and 218.6 [seek remedies, not] 'due and unpaid wages.'" (*Id.* at p. 684, fn. 2.)

Although wage and hour lawsuits are ubiquitous in state courts, most settle before trial. Consequently, our appellate courts have not had much opportunity to publish decisions addressing the derivative wage claim issue vis-à-vis section 226.7 actions. Moreover, to the extent an overtime or minimum wage issue also exists, there is no need to consider "whether violations of meal period regulations give rise to claims for waiting time penalties under section 203 [because the employer will owe] minimum wages for time worked [and that] is a proper basis for . . . waiting time penalties under section 203." (*Kaanaana, supra,* 29 Cal.App.5th at p. 810; see also *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 1336-1337 [in an overtime case, there is no itemized wage statement violation where the hours worked are accurate, but the wages earned are not; "only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wages earned* will be remedied by the violated wage and hour law itself"].)

*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242 (*Ling*) is a notable exception. There, a terminated employee's overtime and meal period claims were sent to arbitration. The employee lost the overtime claim, but was awarded premium wages and section 203 waiting time penalties for missed meal periods. (*Id.* at p. 1248.) *Kirby* had already been decided when the employee asked the arbitrator to award her section 218.5 attorney fees; that request was

29

denied. No party challenged imposition of the derivative section 203 penalty itself, and the employee contended she was entitled to attorney fees based on the award of section 203 waiting time penalties. Both the arbitrator and trial court disagreed. (*Id.* at p. 1251.)

The Court of Appeal affirmed. The appellate panel first noted no "legislative public policy" justified judicial interference with the arbitrator's decision to deny the employee attorney fees based on section 203 waiting time penalties. (*Ling, supra,* 245 Cal.App.4th at pp. 1259-1260.) The appellate panel then concluded that "[e]ven if the arbitrator's ruling here—that plaintiff cannot recover attorney fees on a derivative section 203 waiting time penalty for a section 226.7 violation—is reviewable," there was no error. (*Id.* at p. 1261.)

Although *Ling* framed the issue as involving the recovery of attorney fees, its analysis focused on whether section 203 penalties were derivative of a section 226.7 claim: "We understand that the remedy for a section 226.7 violation is an extra hour of pay, but the fact that the remedy is measured by an employee's hourly wage does not transmute the remedy into a wage as that term is used in section 203, which authorizes penalties to an employee who has separated from employment without being paid. . . . *Kirby* concluded that 'a section 226.7 action is brought for the *nonprovision of meal and rest periods*, not for the "nonpayment of wages."' [Citation.] Following *Kirby*, section 226.7 cannot support a section 203 penalty because section 203, subdivision (b) tethers the waiting time penalty to a separate action for wages. Because a section 203 claim is purely derivative of 'an action for

30

the wages from which the penalties arise,' it cannot be the basis of a fee award when the underlying claim is not an action for wages." (*Ling, supra,* 245 Cal.App.4th at p. 1261.)

Most of the citable decisions discussing whether section 226.7 supports section 203 and 226 penalties are unpublished federal district court opinions (Cal. Rules of Court, rule 8.1115); and those courts are not in accord. For example, Jones *v. Spherion Staffing LLC* (C.D.Cal., Aug. 7, 2012, No. LA CV11-06462 JAK) 2012 U.S.Dist. Lexis 112396, like *Ling*, held that section 203 and 226 penalties were not derivative of a section 226.7 claim: "[The worker] cannot advance a claim for noncompliant wage statements pursuant to section 226[, subdivision] (a) or failure to pay wages due upon termination pursuant to section 203 based solely on alleged violations of section 226.7. First, under *Kirby*, the legal violation underlying a section 226.7 claim is the nonprovision of meal and rest periods and the corresponding failure to 'ensur[e] the health and welfare of employees,' not the nonpayment of wages. [Citation.] *Kirby* makes clear that, despite *Murphy's* holding that the premium pay remedy is calculated as a wage, and that the employee is entitled to that remedy immediately, the payment of the remedy does *not* satisfy section 226.7. 'In other words, section 226.7 does not give employers a lawful choice between providing either meal and rest breaks or an additional hour of pay. *An employer's failure to provide an additional hour of pay does not form part of a section 226.7 violation*, and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation.' [Citation.] Thus, even if the

31

employee agreed to work through a required break in exchange for one hour of pay, and if the extra pay were provided to the employee and recorded on the employee's wage statement, the employee would nonetheless have a claim pursuant to section 226.7. Accordingly, because the employer cannot remedy a section 226.7 violation by compensating the employee, the wrongdoing by the employer is more than the failure to pay wages; it is a failure to ensure the employee's health and wellbeing through reasonable working conditions. [¶] Second, a finding that section 226.7 violations can form the basis for claims under section 226 and section 203, would result in an improper, multiple recovery by the employee." (*Id.* at pp. *8–9.)

The federal district court in *Singletary v. Teavana Corporation* (N.D.Cal., May 2, 2014, No. 5:13-CV-01163-PSG) 2014 U.S.Dist. Lexis 62073 concurred: "The case law on this question is murky at best. . . . [¶] Section 203, like the attorney fee provision in *Kirby*, is concerned with a particular type of wrong, not a particular type of remedy. The first clause of the section clarifies that its penalties only attach 'if an employer willfully fails to pay any wages of an employee.' This clause demonstrates that the wrong [s]ection 203 is concerned with is the prompt payment of wages to a terminated employee. *Kirby* clarified that the wrong at issue in [s]ection 226.7 is the non-provision of rest breaks, not a denial of wages." (*Id.* at p. *4.)

Other federal district courts have held to the contrary. For example, *Finder v. Leprino Foods Co.* (E.D.Cal., Mar. 12, 2015, No. 1:13-CV-2059 AWI-BAM) 2015 U.S.Dist. Lexis 30652 concluded, "Section 226.7 premiums should qualify as wages that are governed by

32

the requirements of [s]ection 226. *Murphy* directly examined the nature of the premium and termed it a 'wage' rather than a 'penalty.' *Kirby* was concerned with characterizing the [s]ection 226.7 claim itself rather than the recompense. The two cases could be interpreted to deal with distinctly different topics: *Kirby* speaks to understanding the substance of the [s]ection 226.7 violation while *Murphy* governs the nature of the damages. Section 226.7 interacts with [s]ection 226 to the extent that the characterization of the damages matter. The holding of *Murphy* is more directly relevant to the issue at hand. Thus, this court relies on *Murphy* in finding that [s]ection 226.7 premiums constitute wages, and are therefore required to be included in wage statements under [s]ection 226." (*Id.* at p. *5.)

*Parson v. Golden State FC, LLC* (N.D.Cal., May 2, 2016, No. 16-CV-00405-JST) 2016 U.S.Dist. Lexis 58299 dealt with a derivative claim pursuant to section 204, but the federal district court concluded a section 203 and 226 analysis applied: "[P]ayments required by section 226.7 should be considered wages, and that Plaintiffs may therefore bring a derivative claim under section 204. . . . [A]lthough an employee who successfully brings a section 226.7 claim is challenging a failure to provide rest breaks, the remedy for that failure is additional wages. . . . Nothing in *Murphy* or *Kirby* suggests that wages awarded under section 226.7 be treated any differently than other wages earned by the employee. . . . "'If an employee is entitled to the additional hour of pay "immediately" upon being forced to miss a rest or meal period, it appears inconsistent to conclude that an employee is not also

immediately entitled to have the additional hour of pay documented on their wage statements and timely paid upon termination or resignation.'" [¶] . . . [¶] . . . It is true that the violation described in section 203—and likewise, section 204—is concerned with the improper payment of wages, while the violation described in section 226.7 is not. However, it is unclear why this distinction resolves the issue. If the amounts due are classified by law as wages and are not properly paid to the employee under the applicable Labor Code section, the employer has presumably committed a violation—regardless of whether the wages are owed to the employee due to hours of labor, additional overtime pay, an award under California law, or some other reason." (*Id.* at pp. *4-*5; see also *Abad v. Gen. Nutrition Ctrs, Inc.* (C.D.Cal., Mar. 7, 2013, No. SACV 09-00190-JVS) 2013 U.S.Dist. 116057.)

Still other federal district courts, noting that section 203 uses the term "wages," while section 226 employs the phrase "wages earned," have found that section 226.7 claims give rise to a derivative claim under section 203, but not under section 226. (*Pena v. Taylor Farms Pac., Inc.* (E.D.Cal., Apr. 22, 2014, No. 2:13-CV-01282-KJM-AC) 2014 U.S.Dist. Lexis 56792, at pp. *8-*10; *Dawson v. Hitco Carbon Composites, Inc.* (C.D.Cal., Aug. 3, 2017, No. CV 16-7337 PSG FFMx) 2017 U.S.Dist. 221866, at p. *7.)

B. *Statutory Interpretation and Standard of Review*

California's laws regulating wages, hours, and working conditions reflect our state's strong commitment to safeguard workers. (*Linton v.*

34

*DeSoto Cab Co., Inc*. (2017) 15 Cal.App.5th 1208, 1220.)  Our laws are "remedial [in] nature . . . for the protection and benefit of employees [and are] liberally construed with an eye to promoting such protection." (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702.)

To the extent the Supreme Court has not resolved an issue, our review of statutory provisions is de novo.  As *Kirby*, quoting liberally from *Murphy*, held, "We independently review questions of statutory construction.  [Citation.]  In doing so, 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent."  [Citation.]  If the statutory language is clear and unambiguous our inquiry ends. . . . "[W]e presume the Legislature meant what it said and the plain meaning of the statute governs."  [Citations.]  In reading statutes, we are mindful that words are to be given their plain and commonsense meaning.'" (*Kirby, supra,* 53 Cal.4th at p. 1250.)

Additionally, the Supreme Court has long admonished, "'the judicial role in a democratic society is fundamentally to interpret laws, not to write them.  The latter power belongs primarily to the people and the political branches of government . . . .'  [Citation.]  It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature.  'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.'" (*California Teachers Assn. v. Governing Bd. of*

*Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 (*California Teachers Assn.*).)

In sum, we begin the "interpretive process . . . [by reviewing t]he Legislature's chosen language . . . because '"it is the language . . . that has successfully braved the legislative gauntlet."'. . . If the statutory language is clear and unambiguous, our task is at an end, for there is . . . nothing for the court to interpret or construe." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082-1083 (*MacIsaac*).)

With these precepts in mind—and in order to determine whether a section 226.7 lawsuit supports derivative claims for section 203 and 226 penalties—we independently assess the language of the relevant statutes, within the boundaries of the Supreme Court's decisions in *Murphy, supra,* 40 Cal.4th 1094 and *Kirby, supra,* 53 Cal.4th 1244.[10]

---

[10] There is no law of the case to apply in this appeal. *Naranjo I, supra,* 172 Cal.App.4th 654 held the Service Contract Act did not preempt claims pursuant to sections 203 and 226, but did not determine whether Naranjo was entitled to those statutory penalties.

Also, this lawsuit does not involve overtime or minimum wage issues, where the derivative penalties in sections 203 and 226 would be triggered. (E.g., *Kaanaana, supra,* 29 Cal.App.5th at p. 810.) Nor are we presented with an employer that failed to pay for on-duty meal periods or unilaterally deducted 30 minutes of pay per day for employees who were required to work through their meal periods; those unpaid amounts also would qualify as wages owed for work performed. The issues in this appeal concern premium wages, not unpaid regular wages.

C.    *Analysis*

California employment law and public policy perspectives have changed dramatically in the past 80 years, but the 1937 statutory definitions of "wages" and "labor" remain intact.[11]  By statute, "wages" are defined only in terms of "labor performed by employees."  (§ 200, subd. (a).)  "Labor," in turn, means "labor, work, or service . . . if the labor to be paid for is performed personally by the person demanding payment."  (§ 200, subd. (b).)

Although *Murphy* characterized the remedy for an employer's meal and rest break violation as a premium wage for the purpose of the statute of limitations, the Legislature did not amend section 200 to accommodate the holding, i.e., the statutory definition of "wages" was not expanded to include the payment of a remedy rather than simply the payment for labor.  In the same vein, *Kirby's* holding that an employee's lawsuit for meal and rest break violations is not an "action brought for the nonpayment of wages," did not prompt the Legislature to amend section 218.5 to add section 226.7 lawsuits to the list of actions for which the prevailing party may recover reasonable attorney fees.

Significantly, when the Legislature amended section 218.5 post-*Kirby* to make it more difficult for a prevailing employer to be awarded attorney fees, it did not disturb *Kirby's* core holding that section 226.7

---

[11]    The California Constitution was amended in 1976 to affirm that "[t]he Legislature may provide for minimum wages and for the general welfare of employees."  (Cal. Const., art. XIV, § 1.)

actions (whether for missed meal or rest breaks or both) are not for "nonpayment of wages" and do not entitle any party to attorney fees pursuant to section 218.5. The Legislature is deemed to be aware of judicial decisions; consequently, we assume that body's decision not to amend a statute in response to a judicial decision is a considered one. (*People v. Tingcungco* (2015) 237 Cal.App.4th 249, 257.)

As the Supreme Court instructs, "'"the plain meaning of the statute governs" . . . [and] words are to be given their plain and commonsense meaning.'" (*Kirby, supra,* 53 Cal.4th at p. 1250.) Section 203 penalizes an employer that willfully fails "to pay . . . any wages" owed to a fired or voluntarily separating employee. The penalty is paid to the employee, not for "labor, work, or service . . . performed personally by the [employee]" (§ 200, subd. (b)), but for the employer's recalcitrance. Read this way, an employer's failure, however willful, to pay section 226.7 statutory remedies does not trigger section 203's derivative penalty provisions for untimely wage payments.

The result is the same for section 226. Section 226, subdivision (e)(1) entitles an employee to minimum fixed penalties or "actual damages" "not to exceed . . . $4,000," plus attorney fees if the itemized statement omits gross and net "wages earned." Section 226.7's premium wage is a statutory remedy for an employer's conduct, not an amount "earned" for "labor, work, or service . . . performed personally by the [employee]." (§ 200, subd. (b).)

The language in sections 200, 203, and 226 "is clear and unambiguous, . . . [and there is] nothing for [this] court to interpret or construe." (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083.) Accordingly,

we hold that section 226.7 actions do not entitle employees to pursue the derivative penalties in sections 203 and 226. The denial of section 203 waiting time penalties is affirmed. The award of itemized wage statement penalties must be reversed. Because appellants were not entitled to section 226 derivative penalties, they were not entitled to section 226, subdivision (e) attorney fees; and the attorney fees awarded pursuant to that statute also must be reversed as well.[12]

It would be naïve to discount the role that statutory penalties and attorney fee awards play in promoting—and chilling—wage and hour litigation.[13] This century, and especially the past decade, has seen a surge in wage and hour lawsuits. The traditional class action format increasingly is giving way to arbitrations and representative actions pursuant to the Private Attorneys General Act (§ 2698 et seq.; (PAGA).) Causes of action pursuant to the Unfair Competition Law (Civ. Code, § 51 et seq.) are standard as well. Additionally, the trend has been to pursue litigation involving working conditions, e.g., worker

---

[12] Class counsel did not ask for attorney fees under any other statute.

[13] *Kirby* addressed the deterrence factor thusly: "As we noted in *Murphy*, '[m]eal and rest periods have long been viewed as part of the remedial worker protection framework,' and low-wage workers are the 'likeliest to suffer violations of section 226.7.' (*Murphy, supra*, 40 Cal.4th at pp. 1105, 1113.) In giving no indication that section 218.5 applies to meal or rest break claims when it enacted section 226.7, the Legislature could reasonably have concluded that meritorious section 226.7 claims may be deterred if workers, especially low-wage workers, had to weigh the value of an 'additional hour of pay' remedy if their claims succeed against the risk of liability for a significant fee award if their claims fail." (*Kirby, supra,* 53 Cal.4th at p. 1259.)

classification, meal and rest breaks, use of seats, etc., in addition to—or instead of—overtime and minimum wage claims.

These lawsuits present statutory interpretation challenges beyond what is typically seen in overtime and minimum wage litigation. They also can be expensive and time-consuming for workers and businesses: Many employers are not individuals or sole proprietorships, so they have no choice but to retain counsel. While it can be fiscally feasible— and in some cases, lucrative—for an attorney to pursue wage and hour claims for classes of workers where the potential for penalties and an attorney fees award exists, the incentive to do so diminishes greatly when penalties and attorney fee awards are foreclosed. Employees whose recoveries would be diverted to pay for representation also might be less likely to pursue meritorious claims. An employer's motivation to settle a meal and rest break action with an agreement to pay penalties and attorney fees is similarly diminished.

Nevertheless, the power to write laws "'belongs primarily to the people and the political branches of government;'" the judiciary's role is "'interpret laws, not to write them.'" (*California Teachers Assn., supra,* 14 Cal.4th at p. 633.) Although courts construe "statutes governing conditions of employment . . . broadly in favor of protecting employees" (*Murphy, supra,* 40 Cal.4th at p. 1103), we do not rewrite them to effectuate that policy. Instead, we must respect the plain meaning of words chosen by an equal and independent branch of our government. (*Voris v. Lambert* (2019) 7 Cal.5th 1141, 1162 ["the history of wage-payment regulation in this state, beginning more than a century ago and continuing through the present day, shows us both that the

Legislature has been attentive to the problem and that it is capable of studying the range of possible solutions and fashioning appropriately tailored relief"]; *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 414 ["[if] gaps persist, the Legislature can act"].)

III.   *Prejudgment Interest*

The trial court awarded the pre-Memorandum 33 meal break subclass prejudgment interest at the rate of 10 percent, per section 218.6, for "any action brought for the nonpayment of wages."  As a section 226.7 lawsuit is not an action for nonpayment of wages, however (*Kirby, supra,* 53 Cal.4th at p. 1255; *Lane, supra,* 224 Cal.App.4th at p. 684, fn. 2), section 218.6 does not authorize prejudgment interest at that rate.

Reliance by the pre-Memorandum 33 meal break subclass on *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138 to uphold the award of 10 percent interest is unavailing.  *Bell* held that section 218.6 applied retroactively to ensure "that judicial awards of due and unpaid *wages* should bear the contract interest rate" of 10 percent.  (*Id.* at p. 1146, italics added.)  This is not a wage case, and *Bell* has no application here.

However, we also reject Spectrum's position that the pre-Memorandum 33 subclass is not entitled to any prejudgment interest. The argument, based on the notion the premium wage is a penalty that could not be determined until Spectrum's liability was established, runs counter to *Murphy, supra,* 40 Cal.4th 1094.  As *Murphy* explained, "an

employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period. . . . By contrast, . . . [t]he right to a penalty, unlike section 226.7 pay, does not vest until someone has taken action to enforce it." (*Id.* at p. 1108.) Civil Code section 3287 establishes a default interest rate of seven percent for litigants "entitled to recover damages certain, or capable of being made certain," calculated from the day that the right to recover the damages vests.

The award of prejudgment interest at 10 percent is reversed. The matter is remanded to the trial court with directions to calculate prejudgment interest for the pre-Memorandum 33 meal break subclass at seven percent.

IV. *Certification of a Rest Break Class*

A. *Class Certification Hearing*

Naranjo sought to pursue on a classwide basis his claim for violation of the right to a duty-free rest break. Naranjo alleged it was Spectrum's policy and practice to routinely deny nonexempt employees duty-free rest periods and compound the violation by failing to pay employees for them. (§ 226.7.)

At all times relevant to this action, Spectrum never authorized or permitted off-duty rest breaks. Pre-Memorandum 33, Spectrum's SOP and SOPP advised, "This job does not allow for breaks other than using the hallway bathrooms for a few minutes." Memorandum 33 provided only for "on-duty" rest breaks. Naranjo supported his motion for certification of a rest break class with excerpts from the deposition of John Oden, a Spectrum director and vice-president, as well as, inter

42

alia, the SOP, SOPP, and Memorandum 33. Oden testified that Spectrum's "require[ment] to maintain constant observation over the prisoner [does mean what it says,]" and if employees leave a room where a prisoner is located, they are expected "to return to the room to provide backup . . . as soon as possible." Naranjo also presented declarations from a number of putative rest break class members, who stated under penalty of perjury "there were no 10-minute duty free rest breaks where the Detention Officer was not responsible for the secure custody of the detainee."

Spectrum opposed the motion to certify a rest break class with declarations of its own by Spectrum supervisors and other personnel. In the main, the declarants stated they were not denied rest breaks; but they also conceded the rest breaks were not duty free: "I have been aware that the job requires that I be available during my break, if needed"; "I understood that I need[ed] to be available if called on during a break"; "When I have supervised, I allow people to take the breaks they wish, but only . . . if they [can be] called back for an emergency"; "Officers . . . cannot leave the premises for their breaks in case it is necessary to call them back to assist with any emergency situation"; "the job requires that we be available even if we are on a break."

The trial court announced its tentative ruling at the beginning of the hearing and adhered to it. The reasons for the class certification rulings were stated on the record: "With respect to the basic elements of determining the propriety of a class," the trial court found ascertainability, numerosity, typicality of Naranjo's claims vis-à-vis the class members, Naranjo's adequacy as a class representative, the

dominance of common questions as to "each of the causes of action except the second cause of action [rest break class]," and the superiority of proceeding as a class action to "resolv[e] each of the causes of action other than the [rest break claim]." Distinguishing the rest break claims, the trial court noted, "A number of the supervisors contend that they did provide the opportunity for rest periods. Certain employees contend they were not provided with rest periods. . . . Certain plaintiffs contend that they were never given a rest period. Certain of the supervisors contend that it was their practice to do so. [¶] I'm aware of the argument that it is contended by plaintiffs that there was a policy that said there would be none. [I think] the factual issue . . . would be unique person by person as to whether or not rest periods were provided. And I don't think, therefore, the class action procedure is the right one for the rest period issue."

Naranjo's counsel asserted the issue was not whether some employees took rest breaks and others did not; rather, it was that Spectrum's uniform policy did not authorize off-duty rest breaks and "common evidence [would] show the violation." The trial court was not persuaded: "If you tried the case with respect to the rest break issue, the issue is whether common questions would predominate. I'm not focusing on the policy. I'm focusing on what actually happened. [¶] . . . [¶] . . . [S]o the concern that I have is, what happened seems to not be consistent with respect to each employee."

After the trial court denied certification for a rest break class, Naranjo neither litigated nor voluntarily dismissed his individual rest break cause of action.

B.   *Naranjo has not Forfeited his Challenge to the Denial of the Rest Break Class Certification Motion*

Spectrum contends Naranjo's failure to litigate or dismiss the denial of the class certification ruling as to the rest break class has resulted in a forfeiture of his challenge on appeal.  Alternatively, Spectrum asserts Naranjo is attempting to raise a new rest break theory for the first time on appeal.  We disagree with both arguments.

Spectrum's first contention is based on the "death knell" doctrine.  A trial court's decision to sustain a demurrer to class allegations without leave to amend, deny a motion for class certification, or grant a motion to decertify a class sounds a "death knell" for the lawsuit.  The ruling, though technically interlocutory, is immediately appealable because it essentially ends the litigation.  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699; *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 (*Baycol*).)  Additionally, because "California follows a 'one shot' rule . . . , [an] appeal must be taken or the right to appellate review is forfeited.  (See [Code Civ. Proc.,] § 906 [the powers of a reviewing court do not include the power to 'review any decision or order from which an appeal might have been taken' but was not] . . . .)" (*Baycol, supra,* at p. 761, fn. 8.)

The death knell doctrine does not apply here.  The trial court certified meal break, waiting time penalty, and itemized wage statement penalty classes, but denied certification for a rest break class.  This ruling was "not similarly tantamount to dismissal and [did] not qualify for immediate appeal under the death knell doctrine; only an

45

order that entirely terminates class claims is appealable." (*Baycol, supra,* 51 Cal.4th at pp. 757-758.) There was no forfeiture on this score.

Nor was Naranjo required to litigate his individual rest break claim in order to preserve, in an appeal from the final judgment, his challenge to the interlocutory order denying certification of a rest break class. Quite the contrary. Had Naranjo litigated his individual rest break claim—and regardless of whether he won or lost—the putative rest break class would have been left "headless" and unable to secure appellate review of the class certification ruling. Under these circumstances, the order denying class certification as to a rest break class constituted an "intermediate ruling" reviewable on appeal by Naranjo from the final judgment. (Code Civ. Proc., § 906.)

Additionally, Spectrum asserts that, in the trial court, Naranjo sought to certify a rest break class only on the basis that Spectrum prohibited rest breaks, but failed to present any evidence to support the claim. Spectrum further contends Naranjo is attempting to argue for the first time on appeal that a rest break class should have been certified because only "on-call" rest breaks were authorized. As just discussed, the record reveals otherwise. The SOP and SOPP, which forbade rest breaks, were presented to the trial court, and the issue of on-call rest breaks, which are prohibited under state law (*ABM Security, supra,* 2 Cal.5th at p. 260), was raised in the trial court. There has been no forfeiture.[14]

---

[14]    Spectrum's assertion in recent supplemental briefing that *ABM Security's* "ruling does not apply here" is simply wrong. The decision in *ABM*

46

C.    *Governing Principles—Class Certification*

The party seeking to proceed by way of a class action has the burden to "demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives.  (Code Civ. Proc., § 382 . . . .)  'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Brinker, supra,* 53 Cal.4th at p. 1021.)  Courts assessing whether common issues of law or fact predominate "must examine the issues framed by the pleadings and the law applicable to the causes of action alleged" (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916) and then "determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." (*Brinker, supra,* 53 Cal.4th at p. 1024.)  At the certification stage, the question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439-440.)

---

*Security* reflects California's prohibition against on-duty and on-call rest periods.  (*ABM Security, supra,* 2 Cal.5th at p. 260.)  It applies.

We review the denial of a motion for class certification under an abuse of discretion standard. (*Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 935 (*Lubin*).) Our review, however, is limited to considering only the reasons articulated by the trial court; we "must ignore any unexpressed reason that might support the ruling. [Citations.] [¶] . . . We will reverse an order denying class certification if the trial court used improper criteria or made erroneous legal assumptions, even if substantial evidence supported the order." (*Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939.)

D. *Analysis*

"California law requires employers to relieve their employees of all work-related duties and employer control during 10-minute rest periods. . . . Wage Order 4, subdivision 12(A)[15] and section 226.7 prohibit on-duty rest periods. What they require instead is that employers relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call." (*ABM Security, supra,* 2 Cal.5th at pp. 272-273.) Naranjo alleged Spectrum's companywide policy was to deny off-duty rest breaks in derogation of California law. As *Brinker* explains, this is precisely the type of claim that is "routinely, and

---

[15] As relevant here, subdivision 12 of Wage Order 4 provides: "(A) Every employer shall authorize and permit all employees to take rest periods [of 10 minutes net rest time per four hours worked] . . . . [¶] (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." (Cal. Code Regs., tit. 8, § 11040, subd. 12.)

properly, found suitable for class treatment." (*Brinker, supra,* 53 Cal.4th at p. 1033.) So it is here.

Spectrum opposed the motion with evidence suggesting employees took rest breaks, but remained on call in the event of an emergency. That evidence does not support the denial of class certification. (*Lubin, supra,* 5 Cal.App.5th 926.) In *Lubin*, the employer did not rebut the employees' evidence concerning a uniform policy to deny rest breaks, but "challenged whether requiring employees to remain on the premises or be reachable by phone or radio, in the event that the rest period had to be interrupted in case of an emergency, meant that the rest period was on-duty [and] also argued . . . '[the employees] overwhelmingly were able to take rest breaks.'" (*Id.* at p. 954.) Persuaded, the trial court decertified the rest break class on the basis "that 'analyzing whether any restrictions placed on rest periods made them on duty would require unmanageable individualized inquiries into the nature of the rest periods for each distinct worksite, shift, and security officer position.'" (*Id.* at p. 955.)

This court reversed: "The proper inquiry for a predominance analysis is whether "'questions of law or fact common to the class predominate over the questions affecting the individual members" [and] . . . does not require plaintiffs to show that an employer's policy affected all members of the class." (*Lubin, supra,* 5 Cal.App.5th at p. 955.) Additionally, because an employer does not have a "due process right to prove on an individualized basis that it provided off-duty rest periods to every class member[,] . . . [i]ndividualized inquiries into whether an employee had a required break on a specific day is relevant to damages,

49

and '[t]he fact that individual [employees] may have different *damages* does not require denial of the class certification motion.'" (*Id.* at pp. 955-956; see also *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1151 ["when an employer has not authorized and not provided legally required . . . rest breaks, the employer has violated the law and the fact that an employee *may* have actually taken a break . . . does not show that individual issues will predominate in the litigation"]; *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1301 [that employees "may have different *damages* does not require denial of the class certification motion"].)

Naranjo's "theory of liability—that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." (*Brinker, supra*, 53 Cal.4th at p. 1033.) Individualized issues will relate only to damages. Commonality for a rest break class established, the typicality and superiority conditions are also satisfied. The order denying class certification of a rest break class must be reversed.

## DISPOSITION

That portion of the judgment awarding the meal break subclass premium wages, but denying section 203 penalties, is affirmed. The portion of the judgment assessing section 226 penalties and awarding the meal break subclass attorney fees is reversed. The meal break subclass is entitled to prejudgment interest on the premium wages

50

award at the rate of seven percent.  The interlocutory order denying certification of a rest break class is reversed.  The matter is remanded to the trial court with directions to award prejudgment interest at seven percent on the premium wages award and to certify a rest break class.

In the interests of justice, the meal break subclass and Naranjo are awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                        DUNNING, J.*

We concur:



WILLHITE, Acting P. J.



CURREY, J.

---

*Retired judge of the Orange Superior Court, assigned by the Chief
  Justice pursuant to article VI, section 6 of the California Constitution.